FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
MAY 30, 2023
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2023 ND 101

Blue Steel Oil and Gas, LLC,                                            Appellant

     v.

North Dakota Industrial Commission,

Slawson Exploration Company, Inc. and

White Butte Oil Operations, LLC,                                       Appellees

### No. 20220359

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Robin A. Schmidt, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Zachary E. Pelham, Bismarck, ND, for appellant.

Steven B. Nelson, Bismarck, ND, for appellee North Dakota Industrial Commission.

Lawrence Bender (appeared) and Spencer D. Ptacek (on brief), Bismarck, ND, for appellees Slawson Exploration Company, Inc. and White Butte Oil Operations, LLC.

# Blue Steel Oil and Gas v. NDIC, et al.
## No. 20220359

**Crothers, Justice.**

[¶1]   Blue Steel Oil and Gas appeals from a district court judgment affirming a North Dakota Industrial Commission order subjecting it to a risk penalty. We affirm the Commission's order finding Slawson made a good-faith invitation to lease or participate, and concluding Blue Steel is subject to a risk penalty.

I

[¶2]   Blue Steel is the owner of an unleased oil and gas interest in the Clarks Creek-Bakken Pool, McKenzie County. In 2012, the Commission pooled all pertinent oil and gas interests in the Clarks Creek-Bakken formation for the development and operation of a spacing unit. That unit—The Jore Federal Spacing Unit—has the capacity for 24 wells. White Butte Oil Operations, LLC operates ten wells that have been completed in the spacing unit. White Butte is a company affiliated with Slawson Exploration Company, Inc., and which operates oil wells on the Fort Berthold Indian Reservation.

[¶3]   In August 2019, Slawson sent Blue Steel a proposal to participate in four wells, but Blue Steel did not return an election to participate. After Slawson sent a proposal, Reeves Dalton, the co-founder of Blue Steel, and Chris Manning, landman for Slawson, spoke on the phone. At the hearing, Manning testified Dalton stated he did not want to lease his interest. Dalton gave conflicting testimony, stating he expressed interest in leasing. The Commission did not make findings on Dalton's or Manning's credibility, did not decide what actually transpired during the telephone call, and did not weigh how the call may have impacted the written invitations to participate.

[¶4]   In October 2019, Slawson sent Blue Steel a proposal to participate in two wells. Blue Steel did not return an election to participate or accept the opportunity to lease. Nor does the record show Dalton or any other person acting on behalf of Blue Steel contacted Slawson about the invitations. Slawson began the risk penalty process for the six wells.

1

[¶5] In August 2021, Blue Steel applied to the Commission for an order finding Blue Steel was not subject to a risk penalty because Slawson failed to make a proper invitation to participate and a good-faith attempt to lease. In December 2021, the Commission held a hearing on the application. In February 2022, the Commission issued an order denying Blue Steel's application, finding Slawson met the good-faith attempt to lease requirement. In March 2022, Blue Steel appealed to the district court, which affirmed the Commission's decision. Blue Steel timely appealed to this Court.

## II

[¶6] Blue Steel argues the Commission erred when it concluded Slawson could impose a risk penalty on Blue Steel. In particular, Blue Steel claims the Commission erred by finding Slawson made a good-faith attempt to obtain Blue Steel's interest without first providing a proposed lease "containing a primary term, a per-acre bonus, a royalty rate, and other clauses."

[¶7] Our standard for reviewing Commission orders is well established:

> "The standard of judicial review of Commission orders is set forth in N.D.C.C. § 38-08-14(3), which provides that orders of the commission must be sustained by the district court if the commission has regularly pursued its authority and its findings and conclusions are sustained by the law and by substantial and credible evidence. This Court applies the same standard of review in appeals from district court involving orders of the Commission. The substantial evidence test is something less than the greater weight of the evidence and the preponderance of the evidence tests, and differs from the usual standard of review for administrative decisions under N.D.C.C. § 28-32-46. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and we accord greater deference to Industrial Commission findings of fact than we ordinarily accord to other administrative agencies' findings of fact. The Commission's decisions on questions of law are fully reviewable on appeal. The Commission's findings of fact must be sufficient to enable this Court to understand the basis for its decision. Even in subject areas that entail administrative expertise, that expertise must be directed toward the statutory standards set forth by the

2

legislature so that reviewing courts may have the benefit of that expertise. If the reasons given do not enable us to understand the basis for the decision, the Commission's decision cannot be sustained."

*Gadeco, LLC v. Industrial Commission of North Dakota*, 2012 ND 33, ¶¶ 15-16, 812 N.W.2d 405 (cleaned up).

[¶8] An operator of oil and gas wells can impose a statutory penalty on mineral owners who do not lease or participate in the risks and cost of drilling. N.D.C.C. § 38-08-08(3)(c). That subsection provides:

> "The owner paying for the nonparticipating owner's share of the drilling and operation of a well may recover from the nonparticipating owner a risk penalty for the risk involved in drilling and completing the well only if the paying owner has made an unsuccessful, good-faith attempt to have the unleased nonparticipating owner execute a lease or to have the leased nonparticipating owner join in and participate in the risk and cost of drilling the well."

*Id.*

[¶9] Commission regulations detail how an operator may impose a risk penalty on a mineral owner:

> "An owner may recover the risk penalty under the provisions of subsection 3 of North Dakota Century Code section 38-08-08, provided the owner gives, to the owner from whom the penalty is sought, a written invitation to participate in the risk and cost of drilling a well, including reentering a plugged and abandoned well, or the risk and cost of reentering an existing well to drill deeper or a horizontal lateral. If the nonparticipating owner's interest is not subject to a lease or other contract for development, an owner seeking to recover a risk penalty must also make a good-faith attempt to have the unleased owner execute a lease."

N.D.Admin.Code § 43-02-03-16.3(1).

[¶10] What constitutes a good-faith attempt is not defined by statute or regulation. Nor has the Commission defined the phrase "good-faith attempt."

Here, the Commission stated, "Many factors can come in to play in deciding whether the standard is met, and those varying factors should be examined in each case to determine whether the statutory obligation is met. The facts in this case will be examined to determine whether Slawson has fulfilled its statutory obligation."

[¶11] The Commission rejected Blue Steel's claim a proposed lease was required as part of an offer to participate. Before doing so, the Commission expressed a preference that the operator should provide the owner with a written lease proposal. However, the Commission concluded that the circumstances in this case required "further examination." The Commission also stated:

> "The Commission declines to define 'a good-faith attempt to have a lease executed' but acknowledges there are different levels of experience among unleased mineral owners and while a written lease proposal that includes a primary term, a per-acre bonus, and a royalty rate may be appropriate for very inexperienced mineral owners in simple leasing situations, there are circumstances, especially in complicated leasing situations such as exists in this matter before the Commission, and/or where lessor input is necessary before specific terms can be properly included, where a different approach may be appropriate to get to a written lease proposal that includes the aforementioned items.
>
> "While a written lease proposal that includes a primary term, a per-acre bonus, and a royalty rate provides important information to make an informed decision on whether the paying owner made a good-faith attempt to have the unleased owner execute a lease, the Commission does not believe it is necessary in all situations."

[¶12] The Commission also found Dalton is the co-founder and member-manager of Blue Steel and Blue Steel's parent company, Vintage. Dalton is an experienced landman. Blue Steel has participated with Slawson and leased mineral interests to Slawson. Slawson sent Blue Steel multiple invitations to participate.

4

[¶13] The Commission reviewed facts in this case, focusing on Dalton's involvement in earlier offers to participate in the Jore Federal Spacing Unit wells. That history showed that Dalton acted as a member-manager for Vintage and Blue Steel when those companies chose to participate in the first four wells drilled in the spacing unit. The Commission found Dalton was representing Blue Steel when it did not respond to Slawson's invitations to participate in the next six wells drilled in the unit. From these facts, the Commission concluded:

> "It is clear that Dalton knew, or should have known, what the alternative option to receive a lease offer language in Slawson's invitations meant, what he had to do in order to participate, what he had to do in order to receive a lease offer, and what it meant if he did not respond.

> "Dalton, as member-manager for Blue Steel, did not object to Slawson's lease offer details language in its invitations when he received and elected to participate in the Jore (Federal) #1-12H, Jore (Federal) #12-12TFH, and Jore (Federal) #13-12TF2H wells, when at the time Blue Steel was an unleased mineral interest owner owning the Wolff minerals and could have leased said minerals to Slawson instead of participating."

[¶14] The Commission considered it important that the invitations received by Blue Steel from Slawson contained specific language: "If you would like to pursue this alternative, please indicate so in the space provided in the election ballot and provide the requested contact information before the end of the 30-day election period. A representative from Slawson will then contact you with assignment or lease offer details." The invitation also stated, "Please indicate your interest in this alternative on the election ballot and provide your contact information in order that we may contact you before the end of the 30-day election period with any assignment or lease offer details." Blue Steel did not object to the invitations or request clarification about what was required by the invitation.

[¶15] Based on the facts of this case, and given our standard for reviewing the Commission's findings, the Commission did not err in finding Slawson made Blue Steel a good-faith attempt to lease or participate in operation of the wells.

We therefore affirm because the Commission has regularly pursued its authority, and its findings and conclusions are sustained by the law and supported by substantial and credible evidence.

## III

[¶16] Blue Steel argues the Commission erred when it concluded Blue Steel was subject to a risk penalty because Slawson failed to give Blue Steel a full 30 days to review Slawson's proposed lease, and to decide whether to accept or decline the invitations to participate or lease.

[¶17] Blue Steel's argument that Slawson failed to give them 30 days relies on N.D.Admin.Code § 43-02-03-16.3(1)(b). That provision requires "[a]n election to participate must be in writing and must be received by the owner giving the invitation within thirty days of the participating party's receipt of the invitation." *Id*. We reject Blue Steel's argument. First, this provision does not require that the invitation include a proposed lease or lease terms. Second, because we affirm the Commission's conclusion that a proposed lease was not required for Slawson to make a good-faith attempt, we similarly conclude the Commission did not err in finding Blue Steel was not entitled to have a full 30 days to review a lease proposal together with the invitations to participate.

## IV

[¶18] We have considered Blue Steel's remaining arguments and conclude they are either without merit or unnecessary to our decision. We affirm the district court judgment affirming a North Dakota Industrial Commission order subjecting Blue Steel to a risk penalty.

[¶19] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

6